1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10  DALENE SHORT,                      )   Case No. ED CV 08-190 PJW
    for Shandale R. Navarro, a minor, )
11            Plaintiff,               )
                                       )   MEMORANDUM OPINION AND ORDER
12       v.                            )
                                       )
13  MICHAEL J. ASTRUE,                 )
    Commissioner of the               )
14  Social Security Administration,    )
                                       )
15            Defendant.               )
                                       )
16  ─────────────────────────────────

17       Before the Court is Plaintiff's appeal of a decision by Defendant

18  Social Security Administration ("the Agency"), denying her application

19  for Supplemental Security Income ("SSI").  Because the Agency's

20  decision that Plaintiff was not disabled within the meaning of the

21  Social Security Act is not supported by substantial evidence, it is

22  reversed and the case is remanded.[1]

23       On July 22, 2005, Plaintiff applied for SSI.  (Administrative

24  Record ("AR") 27.)  The Agency denied the application initially and on

25  reconsideration.  (AR 28-37.)  Plaintiff then requested and was

26  granted a hearing before an Administrative Law Judge ("ALJ").  (AR 38-

27  ─────────────────────

28       [1]  This action was brought be Dalene Short on behalf of her minor
    daughter Shandale Navarro.  For ease in understanding, however, the
    Court refers to Navarro as "Plaintiff" throughout this decision.

41.)  On August 31, 2007, Plaintiff and her mother appeared with
counsel at the hearing and testified.  (AR 213-21.)  On October 18,
2007, the ALJ issued a decision denying benefits.  (AR 7-21.)
Plaintiff appealed the ALJ's decision to the Appeals Council, which
denied her request for review.  (AR 3-5.)  She then commenced this
action.

Plaintiff claims that the ALJ erred by failing to properly
consider: 1) the opinion of her treating psychiatrist; 2) the type,
dosage, and side effects of her medication; and 3) Plaintiff's and her
mother's testimony at the hearing.  (Joint Stip. at 3-4, 9-10, 11-13,
15-16.)  For the following reasons, the Court concludes that the ALJ
erred when he rejected Plaintiff's and her mother's testimony without
providing adequate reasons for doing so and that the matter must be
remanded for further consideration of their testimony.

In her first claim of error, Plaintiff contends that the ALJ
failed to provide legally sufficient reasons for rejecting the opinion
of her treating psychiatrist, Dr. Louis Glatch.  (Joint Stip. at 3-4.)
As explained below, the Court disagrees.

In October 2005, state agency reviewing physicians Schrift and
Holmes found that Plaintiff had "no psychiatric impairment."  (AR
105.)  Plaintiff claims that, in January 2006, she attempted to kill
herself by overdosing on medication.  (AR 88, 92, 118, 196-98.[2])  She

---

[2]  The evidence supporting Plaintiff's claim that she attempted
suicide is lacking.  The only records from her inpatient care at Loma
Linda Hospital following her reported suicide attempt are three copies
of a one-page discharge form, each of which contains hand-written
changes from the previous version, (AR 196-98), and a Patient
Information Sheet, which contains information regarding hospital
policies and procedures.  (AR 199.)  The discharge form notes that
Plaintiff was hospitalized for depression, not suicide.  (AR 196.)

2

was hospitalized for a week.  (AR 196-98.)  Thereafter, she reported to a mental health clinic for outpatient treatment and therapy.  (AR 92-97.)  Plaintiff was initially screened at the clinic by therapist Cristina Dawes, who took Plaintiff's history and ultimately diagnosed her with "major depressive episode recurrent severe without psychotic feature."  (AR 97.)  She assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 40.  (AR 97.)  Dawes' form was endorsed by psychiatrist Louis F. Glatch because, as a therapist, Dawes was apparently not authorized to diagnose patients on her own.  (AR 97.)

In a treatment note dated March 28, 2006, Dr. Glatch noted that Plaintiff reported that her mood was "O.K.," that her affect was appropriate, and that her thoughts were linear.  (AR 90.)  He diagnosed her with "depression [not otherwise specified]," and assigned a GAF of 45.  (AR 90.)  He prescribed Zoloft and scheduled Plaintiff's next appointment for six weeks later.  (AR 91.)  His treatment notes between April and August 2006 show that Plaintiff reported improvements in her appetite, sleep, and energy, and no further suicidal ideations.  (AR 85-87.)

In an evaluation completed in October 2006, neurologist Joel Ross and another reviewing physician ("M. Skape" it appears) found, among other things, that Plaintiff had low "self esteem as 'different from peers' but still less than marked."  (AR 114.)  They determined that

---

The only other evidence in the record relating to Plaintiff's suicide attempt are notes reflecting that Plaintiff reported to health care providers that she had attempted suicide.  (AR 88, 92, 118.)  This issue impacts not only Plaintiff's claim that she is disabled but also her credibility.  On remand, the parties should attempt to obtain the records from Loma Linda regarding Plaintiff's hospitalization from January 31, 2006, to February 6, 2006.

Plaintiff's impairments did not meet or equal any Listing.  (AR 111-16.)

In November 2006, Plaintiff "went off her meds" and her suicidal ideations returned, leading Dr. Glatch to increase her dosage of Zoloft.  (AR 83, 98.)  In February 2007, Dr. Glatch determined that Zoloft was not effective and prescribed Prozac, instead.  (AR 82, 98.) Plaintiff visited Dr. Glatch in March 2007, again, and reported that her behavior, mood, appetite, and energy were all good.  (AR 81.)  Dr. Glatch instructed her to return 12 weeks later.  (AR 81.)  Plaintiff returned in July 2007, and again reported doing better.  (AR 80.)  Dr. Glatch scheduled her next appointment for 12 weeks later.  (AR 80.)

In his October 2007 decision, the ALJ concluded that Plaintiff's mood disorder with depression constituted a severe impairment, but that it did not restrict her activities of daily living or her ability to maintain concentration, persistence, or pace.  (AR 13-14.)  He noted that the reports from her mental health examinations indicated that she was within normal limits, oriented in all spheres, and had normal intellectual functioning.  (AR 13.)  He also noted that she was in school at the appropriate grade level for her age (though she studied at home because of back pain), that she was being seen by a psychiatrist only once a month, and that her depression was being controlled with medication.  (AR 13.)

The ALJ discounted the February 28, 2006 assessment prepared by Dawes and endorsed by Glatch--diagnosing Plaintiff with major depression and a GAF score of 40--on the grounds that the findings were not supported by the medical record and "not credible or consistent with the mental status examination" conducted that same day, which revealed nothing more than "occasional insomnia due to back

4

pain." (AR 14.)  The ALJ did not directly address Dr. Glatch's March 28, 2006 report, noting only that Plaintiff's mental health treatment had been "minimal," that she underwent psychotherapy once a month, and that she took Prozac, which he contended she admitted improved her symptoms. (AR 13.)  He also noted that her mental health condition was apparently good enough by March 2007 that Dr. Glatch did not schedule her next appointment until July 2007, and that, in July 2007, her condition was reported as stable. (AR 13.)

Plaintiff argues that the ALJ rejected Dr. Glatch's "opinions" (at pages 88-91 and 97 of the administrative record) without providing legally sufficient reasons. (Joint Stip. at 3.)  For the following reasons, the Court disagrees.

As a general rule, a treating doctor's opinion is given priority over the opinions of non-treating doctors. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).  To reject a treating doctor's opinion that is contradicted by another doctor's opinion, an ALJ must provide specific and legitimate reasons, supported by substantial evidence in the record, for doing so. *Id.*  Where, however, the ALJ's findings are consistent with the treating doctor's opinion, the ALJ is not required to explain why the treating doctor's opinion was not followed. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The ALJ read and considered the February 28, 2006 screening form prepared by Dawes and endorsed by Dr. Glatch found at pages 92-97 of the administrative record. (AR 14.)  He summarized the findings from the form in his decision. (AR 14.)  In rejecting Dr. Glatch's conclusions, including the GAF score of 40, he noted that Plaintiff had not reported any behavioral or school problems, that she interacted well with others, and that, therefore, the GAF score was

not "credible or consistent with the mental status examination" performed at the time. (AR 14.) These are specific and legitimate reasons for rejecting the doctor's findings and they are supported by substantial evidence in the record.

A GAF score of 40 is reserved for people who have "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing in school)." Diagnostic and Statistical Manual of Mental Disorders-IV-TR at 34. Plaintiff did not display any of these characteristics on the day she was screened by Dawes. (AR 92.) Dawes noted that Plaintiff spoke quietly, but found that she was articulate and insightful. (AR 92, 95.) She found Plaintiff had no problems with thought content or delusions, though her sentences and ideas were sometimes broken or unfinished. (AR 95.) These findings are not consistent with a person whose speech is at times illogical, obscure, or irrelevant.

Dawes also noted that Plaintiff was being home-schooled because of her back pain but was "keeping grades up" and had no behavioral or school problems. (AR 92, 94.) Dawes found that Plaintiff did not have any problems with her siblings and had the support of her parents. (AR 94.) Thus, there was no indication that Plaintiff was experiencing a major impairment in school, family relations, judgment, thinking, or mood, either. Absent any of these problems, there was no justification for Dr. Glatch's GAF score of 40 and the ALJ properly rejected it.

As to Dr. Glatch's March 2006 report at pages 88-91 of the administrative record, the Court agrees with Plaintiff that the ALJ failed to specifically mention the report, but does not agree that this failure requires remand.  This report was prepared by Dr. Glatch almost two months after Plaintiff purportedly attempted to commit suicide.  Though it does contain a GAF score of 45, which suggests that Plaintiff was still not doing too well, there is an alternate score of 60 reported along with the score of 45.  (AR 90.)  Thus, whatever the significance of the GAF score of 45, it is undermined by the alternative score of 60 in the same entry.  More importantly, however, the Court does not interpret the report as an opinion that Plaintiff was unable to function in October 2007 due to her psychological condition.  The entries contained in the report as well as the GAF score of 45/60 are Dr. Glatch's impressions of Plaintiff's then-current condition.  Dr. Glatch's later reports suggest that, by July 2007, Plaintiff was not suffering from any emotional maladies at all.  (AR 80 ("mood is o.k.[,] appetite is good[,] energy is o.k.[,] onset insomnia[,] conc[entration] is o.k.[,] no [suicide ideation,] no [illegible]") .)

The ALJ's ultimate conclusion that Plaintiff's condition had improved significantly between February 2006 and October 2007, when he issued his decision, and that Plaintiff did not have any psychiatric ailments that more than minimally affected her functional abilities, is supported by the record, including Dr. Glatch's records.  As such, the ALJ was not required to explain why he was rejecting Dr. Glatch's "opinion."  *Meanel*, 172 F.3d at 1113.

In her second claim of error, Plaintiff contends that the ALJ erred when he failed to discuss the fact that Plaintiff's psychiatric

7

1  medications did not help her and that they caused side effects, which

2  the ALJ overlooked.  (Joint Stip. at 9, 10.)  This claim is without

3  merit.

4      As an initial matter, the record does not support Plaintiff's

5  claim that the psychiatric medications prescribed by Dr. Glatch were

6  ineffective.  As noted above, Dr. Glatch's treatment notes show that

7  Plaintiff's mood, appetite, and sleep reportedly improved over time as

8  she was prescribed Zoloft and, later, Prozac.  (AR 80-87.)

9  Additionally, Plaintiff's suicidal ideations returned after she went

10  off her medications in November 28, 2006, but subsided when she took

11  them, which suggests that the medications had been helpful.  (AR 80-

12  83.)

13      Plaintiff also claims that the ALJ failed to properly consider

14  the side effects of her medication in analyzing whether she was

15  impaired.  As explained below, the record does not support Plaintiff's

16  claims about side effects.

17      The "type, dosage, effectiveness, and side effects" of medication

18  taken by a claimant to treat pain or other symptoms are factors

19  relevant to a disability determination and should be considered by the

20  ALJ.  20 C.F.R. § 404.1529(c)(3)(iv); *see also* SSR 96-8p.  But a

21  claimant bears the burden of proving that a medication's side effects

22  are disabling.  *See Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.

23  1985) (holding that claimant failed to meet burden of proving that an

24  impairment was disabling where he produced no clinical evidence

25  showing that his prescription narcotic use impaired his ability to

26  work); *see also Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002)

27  (upholding ALJ's rejection of claimant's statements that her

28  medications affected her concentration and made her dizzy where no

8

objective evidence was put forth and the ALJ properly found her testimony was generally not credible).

There is very little evidence in this record supporting Plaintiff's claimed side effects.  Dr. Glatch's treatment notes show that, on May 25, 2006, Plaintiff complained that she was "more irritable"; on October 24, 2006, she complained of "flu like [symptoms]"; and on July 18, 2007, she complained of insomnia.  (AR 80, 84, 86.)  On all of her other visits over the 18-month period she was treated by Dr. Glatch, she either never complained of side effects or denied that she was experiencing any when asked by Dr. Glatch.  (AR 81-83, 85, 87.)  Further, there is no objective evidence establishing that she was suffering from side effects.  Where there is no evidence other than the claimant's testimony about side effects, the ALJ's failure to address them is not error.  *See*, *e.g.*, *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (holding ALJ did not err in excluding alleged side effects from hypothetical question where the record contained only "passing mentions of the side effects of [claimant's] medication . . . but there was no evidence of side effects severe enough to interfere with [claimant's] ability to work").  For these reasons, this claim is rejected.

In her third claim of error, Plaintiff contends that the ALJ failed to provide specific reasons for rejecting her testimony. (Joint Stip. at 11-13, 15-16.)  For the reasons set forth below, the Court agrees with Plaintiff.

ALJ's are tasked with judging the credibility of witnesses.  In making a credibility determination, an ALJ may take into account ordinary credibility evaluation techniques.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Where, as here, a claimant has produced

9

objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons. *Id*. at 1283-84.

The ALJ addressed the substance of Plaintiff's testimony and his credibility finding in two brief paragraphs as follows:

> At the hearing the claimant's . . . testimony was not credible to the extent [she] alleged total disability. The claimant testified she completes her school assignments at home and does not attend the school campus classes due to back pain. She also lies down frequently to relieve back pain. She is frequently out of breath due to asthma. She alleged back surgery has been recommended when she attains age 21. She is depressed about her physical condition. She admitted that back pain is relieved with medication and depressive symptoms are improved with Prozac.
>
>                                    . . .
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely credible.

(AR 16.)

Plaintiff complains that the ALJ's reasons for rejecting the testimony are not specific, clear, and convincing, and are not supported by the evidence. (Joint Stip. at 11-13.) The Court agrees.

10

As a starting point, the Court finds that the ALJ's finding that Plaintiff admitted at the administrative hearing that her back pain was relieved with medication and her depression improved with Prozac is simply not true.  Plaintiff never testified to either of these things at the administrative hearing and the ALJ's findings to the contrary are clearly erroneous.

Once these reasons are eliminated, there seems to be little or no support for the ALJ's credibility finding; he merely summarily concluded that the testimony was not credible without providing any justification.  (AR 16.)  This is improper. *Smolen,* 80 F.3d at 1283-84.  For that reason, it is reversed and the case is remanded for further consideration of the credibility issue.

The Agency disagrees.  It has combed through the ALJ's 12-page decision and pulled out facts contained therein which tend to support the ALJ's finding that Plaintiff's testimony was not credible.  (Joint Stip. at 14.)  The Court agrees with the Agency that there are facts in the ALJ's decision that would support the conclusion that Plaintiff was not credible.  For instance, the ALJ noted that Plaintiff was doing well in school.  (AR 13.)  But he also made findings that would undermine his credibility finding, like the fact that Plaintiff was assessed with a GAF of 40.  (AR 14.)  Worse yet, the ALJ left out critical facts that would have further undermined his credibility finding.  For example, he summarily noted that Plaintiff was treated at Loma Linda Behavioral Medicine Center in January 2006, but neglected to point out that she was there for a week because she had tried to kill herself.  (AR 14.)

Further, and more importantly, the Court is not at liberty to sift through this conflicting evidence culling out only the facts that

11

1  support the ALJ's finding and affirm it.  Rather, it is limited to

2  reviewing the reasons stated by the ALJ in his decision and

3  determining whether they are sufficient to support his finding.  *See,*

4  *e.g., Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e

5  cannot affirm the decision of an agency on a ground that the agency

6  did not invoke in making its decision . . . .").

7      The same analysis holds true for the ALJ's rejection of

8  Plaintiff's mother's testimony.  Though the threshold is much lower--

9  i.e., the ALJ need only set forth reasons that are germane to the

10  witness, *see Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053

11  (9th Cir. 2006)--the Court concludes that that threshold was not met

12  here.

13      In addressing the mother's testimony, the ALJ found:

14      The claimant's mother testified the claimant had severe back

15      pain and is very stiff in the mornings.  She described the

16      claimant as depressed over her medical condition.  She was

17      given authorization due to her chronic pain for a teacher to

18      bring her school assignments to the home.[3]

19  (AR 16.)

20      The ALJ rejected this testimony, finding:

21      At the hearing the [] mother's testimony was not credible to

22      the extent [she] alleged total disability.

23      . . .

24

---

25      [3]  In addition to her testimony at the administrative hearing,
26  Plaintiff's mother submitted extensive written "testimony" as well.
    (AR 53-78).  The ALJ completely ignored this testimony, which he is
27  not allowed to do.  *See Schneider v. Comm'r, Soc. Sec. Admin.*, 223
    F.3d 968, 974-75 (9th Cir. 2000) (holding ALJ must consider lay
28  witness evidence in the form of written submissions).

1    After considering the evidence of record, the undersigned
2    finds that the claimant's medically determinable impairments
3    could reasonably be expected to produce the alleged
4    symptoms, but that the statements concerning the intensity,
5    persistence and limiting effects of the claimant's symptoms
6    are not entirely credible.
7  (AR 16.)

8    There appears to be no justification given for rejecting the
9  mother's testimony.  The Agency seems to concede this issue--though it
10 does not say so in the Joint Stipulation--and argues that the error
11 was harmless.  (Joint Stip. at 16.)  It is unclear to the Court
12 exactly what standard the Agency is championing for this harmless
13 error analysis, though.  It states that the error is harmless because
14 of the "substance of the testimony and the ALJ's finding regarding
15 Plaintiff and her mother's credibility . . . ."  (Joint Stip. at 16.)
16 It also argues that the mother's testimony was merely cumulative of
17 Plaintiff's testimony, which the Agency believes was rightfully
18 rejected, so that the mother's testimony was properly ignored.  (Joint
19 Stip. at 17.)  Neither of these standards is correct.

20   Under the harmless error test for reviewing an ALJ's failure to
21 properly discuss lay witness testimony, the Court fully credits the
22 testimony and determines whether it can confidently conclude that no
23 reasonable ALJ accepting the testimony would have concluded that the
24 claimant was disabled.  *Stout*, 454 F.3d at 1056.  Applying this test,
25 the Court concludes that the error is not harmless.  If the mother's
26 testimony at the administrative hearing her "testimony" contained in
27
28

her written submissions to the Agency are fully credited, a reasonable ALJ might well conclude that Plaintiff was disabled.  For this reason, this issue, too, is remanded to the ALJ for further development.

Plaintiff has requested that the Court reverse the ALJ's decision and remand for an award of benefits.  (Joint Stip. at 18).  The Court concludes that such an award is not warranted in this case because it is not clear whether Plaintiff and her mother's testimony is to be credited and, if so, to what extent.  *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (holding that remand for reconsideration of credibility determination may be appropriate); *see also Vasquez v. Astrue*, 547 F.3d 1101, 1106-07 (9th Cir. 2008) (noting that "credit-as-true" rule should not apply if there are outstanding issues to be resolved before a proper disability determination can be made), *amended in other respects on denial of reh'g en banc*, 572 F.3d 586 (9th Cir. 2009).  For this reason, this request is denied.


IT IS SO ORDERED.

DATED: August ____14____, 2009.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\SHORT, S 190\Memo_Opinion.wpd

14